**Joyce H. BREWSTER, Plaintiff,**

**v.**

**G. Wayne PIKE, et al., Defendants.**

**Joyce H. BREWSTER, Plaintiff,**

**v.**

**Buford E. SHOCKLEY, et al., Defendants.**

**Civ. A. Nos. 80–0131–A, 83–0275–A.**

United States District Court, W.D. Virginia, Abingdon Division.

May 13, 1985.

1164

Harriet D. Dorsey, Blacksburg, Va., for plaintiff.

James P. Jones, Bristol, Va., Kenneth W. Thorson, Asst. Atty. Gen., Richmond, Va., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GLEN M. WILLIAMS, District Judge.

This discrimination case is before the court upon remand from the United States Court of Appeals for the Fourth Circuit directing this court to prepare written findings of fact and conclusions of law. On April 4, 1983, this court entered a bench opinion in the above cases finding that the plaintiff was entitled to relief under 42 U.S.C. § 1983. Due to the length of time which has expired and the many volumes of evidence in this case, this court entered an Order directing the plaintiff and the defendants to submit proposed findings of fact and conclusions of law. In addition, the court has reviewed the briefs filed in the appellate court.

Upon consideration of what has occurred in this case since the original bench opinion, the court notes that much clarification and correction is warranted. Many issues were raised in the Court of Appeals which were not addressed at all by this court. Further, this court made certain rulings which appear to have been based upon an improper assumption and are, therefore, in error. Other errors of the court and counsel, coupled with the case law that has developed since the trial, necessitate a thorough review of each aspect of the case to bring order to the action.

BACKGROUND

Initially, the court must correct an error that arose out of the confusion as to which party was the appellant in this case. The court was under the impression that defendants were the appellants and entered an Order on July 13, 1983, directing appellants to order a transcript of the entire hearing and to bear the cost of its preparation. The state defendants apparently shared the court's mistaken view and sought to be relieved of the duty to pay for the transcript. Despite the confusion, it was always the intention of the court that the appellant should pay for the transcript of the trial. Upon return of the case from the Fourth Circuit, this court learned that Joyce H. Brewster was the appellant. Therefore, in accordance with the previous Orders, the court shall direct the plaintiff-appellant to reimburse the state defendants for the cost of the transcript.

In the bench opinion of April 4, 1983, the court stated as follows:

> You've each agreed that I should consider the two sex-discrimination claims, that is the claim under the Equal Pay Act and the case of actual sexual discrimination under what I refer to as the *Burdine* test. Probably, it should be more clearly called the *McDonnell-Douglas* test because it began with *McDonnell-Douglas Corporation v. Green,* 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973).

In the Court of Appeals, the plaintiff-appellant alleged that this court erred in not considering a different standard of proof in the Equal Pay Act Case. This contention is absolutely correct and had this been called to the court's attention, it would never have rendered a bench opinion. The plaintiff may well have waived this argument; however, it is grossly unfair to this plaintiff, who has been treated very unfairly by the state in this case and throughout, to be the victim of a misunderstanding on the part of the court and counsel. The court, therefore, is of the opinion that, in order to

be fair to the plaintiff, it should now consider the equal pay claim separately and under standards different from those of the Title VII case.

In the bench opinion and throughout the prior proceedings in this court, the court did not rule on the contention made by the defendants that a deputy sheriff, which the plaintiff claimed to be, is not an "employee" within the meaning of either the Equal Pay Act or Title VII. While the court discussed the issue at some length in a memorandum opinion entered earlier in this case, no final ruling was made. This issue, however, has now been presented and argued in the briefs in the Fourth Circuit and warrants further review in light of more recent cases.

The relationship between a sheriff and a deputy sheriff, which has great bearing on this issue, has been considered and ruled on by this court and Judge Kiser in the Western District of Virginia since this case. Thus, the court is of the opinion that it should rule on this important issue.

With regard to attorney's fees, the decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), decided since this case, clarified the appropriate considerations where such fees are awarded. Assuming that, at the conclusion of the case, the judgment is still in favor of the plaintiff, the attorney's fees should be considered in light of *Hensley v. Eckerhart*.

Furthermore, this case was decided based upon the court's interpretation of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which has been the subject of numerous interpretations including two *en banc* decisions by the Fourth Circuit. In view of these more recent interpretations of *Parratt v. Taylor*, this court will now reconsider the question of liability under Section 1983.

The court will, therefore, be discussing issues beyond those which were considered in the bench opinion rendered at the conclusion of the trial in this case.

## FINDINGS OF FACT

The Plaintiff, Joyce H. Brewster, became an employee of the Wythe County Sheriff's Department in June, 1968, and remained with the Sheriff's Department until December 31, 1979. Until 1974, plaintiff was employed as a secretary and her duties were entirely secretarial in nature. Subsequently, plaintiff began to combine her secretarial duties with those of a matron. In the spring of 1974, having completed correctional officers' training school, plaintiff was appointed to the position of deputy sheriff and was relieved of her secretarial duties. She worked full-time in the jail as a corrections officer until December 31, 1979.

During the plaintiff's tenure with the Wythe County Sheriff's Department, plaintiff's salary, as well as that of all full-time deputies, was determined ultimately and solely by the State Compensation Board, with the Commonwealth of Virginia paying two-thirds of this amount. The remaining one-third was paid by the county in which the deputy sheriff was employed, through its elected Board of Supervisors. The Board of Supervisors and the State Compensation Board based their decisions upon recommendations made by the Sheriff. The Sheriff had the right to appeal to state court a decision of the State Compensation Board. Likewise, the county Board of Supervisors had the right to appeal an adverse decision regarding county employees. The particular employee, however, did not have any redress under the law. Thus, a deputy sheriff could not file suit against the State Compensation Board when pay was denied. Unless the Sheriff or Board of Supervisors took up the cause by going to court, a deputy sheriff was left without a remedy. Although the Sheriff controlled the manner of execution of duties by appointees and had the exclusive power to hire and fire, new positions had to be approved by the Board of Supervisors and, ultimately, by the State Compensation Board. Thus, opportunities for advancement were dependent upon the Sheriff, the Board of Supervisors, and the State Com-

pensation Board who were all, collectively, Mrs. Brewster's employer.

As early as June 18, 1974, Sheriff Shockley certified that Mrs. Brewster devoted more than fifty percent of her time to the duties of corrections officer. Under the applicable standards, such a person should be paid as a corrections officer. Each subsequent year, Sheriff Shockley continued this certification. Nevertheless, the Board of Supervisors and the Compensation Board refused to accept this certification or to reclassify the plaintiff and pay her accordingly until July 1, 1977. When she was reclassified, Mrs. Brewster was not given credit for her previous years of service as a full-time corrections officer. She was, therefore, paid on a scale several steps below the level she would have reached by 1977 had she been reclassified in 1975. This formed the primary basis for the plaintiff's lawsuit.

The court finds that prior to 1977, the plaintiff was the only corrections officer assigned to female prisoners, that she worked forty hours per week on a regular shift, and that she was on call twenty-four hours a day. Her duties required the same skills, effort, and responsibility as that of a male corrections officer. In addition, the plaintiff was subject to the rules, regulations, and personnel policies applicable to all other county employees, including uniform policies regarding vacations, sick leave, promotions, and pay scales. While male corrections officers generally cared for male inmates, she also cared for juvenile offenders and, occasionally, for male prisoners. The plaintiff also searched prisoners at the jail, transported prisoners, served as chief jailer when necessary, and was called upon to handle violent prisoners. She handled mail and kept jail records for all prisoners. Like the male correction officers, she spent one hundred percent of her time fulfilling the duties of a corrections officer. The plaintiff was on call at all times and actually worked more hours than was normal for male corrections officers.

It is undisputed that Mrs. Brewster's duties remained the same from 1975 through 1979. No change in her duties occurred in July, 1977, when she was reclassified. The court finds that there is no credible evidence tending to show that the plaintiff devoted less than fifty percent of her time to the duties of a corrections officer. The only reason given by the Board of Supervisors for failing to recommend reclassification to the State Compensation Board was that, given the relatively low female jail population, the Board did not believe Mrs. Brewster devoted more than fifty percent of her time supervising female prisoners. Since the court finds that she did spend more than fifty percent of her time performing the duties of a corrections officer, the question of whether the plaintiff was restricted to working with female inmates, and was thereby the subject of discrimination, is immaterial to the decision in this case. The State Compensation Board's reason for refusing to promote Mrs. Brewster was that it relied upon the Board of Supervisors. Nothing in the state law requires the Compensation board to obtain the consent of the local Board of Supervisors before placing an employee on the corrections officer pay scale. Since the county provided one-third of the pay, however, it was customary and a policy of the Compensation Board to consult with the Board of Supervisors in this regard. The court further finds that neither the Board of Supervisors nor the State Compensation Board made any investigation to determine the nature of Mrs. Brewster's duties. Although the Sheriff certified that the plaintiff was employed in the position of corrections officer, the Board of Supervisors and the Compensation Board ignored the certification. Moreover, neither Sheriff Shockley nor the Board of Supervisors appealed the States Compensation Board's refusal to reclassify the plaintiff.

The plaintiff was employed by the holder of an elected public office in the Commonwealth of Virginia. As such, she was not subject to the civil service laws in her employment. Mrs. Brewster was also subject to be fired at will and, therefore, had no property right in her employment.

The State Compensation Board is a three-member commission which annually reviews and approves the budgets of all 540 locally elected city and county officials in the Commonwealth of Virginia. The Compensation Board sets the salary of a full-time deputy sheriff as provided for in Section 14.1–73.2(e) of the Code of Virginia. One is a full-time deputy sheriff or corrections officer, according to the State Compensation Board, if one devotes more than fifty percent of his time to corrections officer work.

As previously stated, in the year 1975, the plaintiff's promotion was turned down simply because the Board of Supervisors took issue with Shockley's certification that the plaintiff devoted more than fifty percent of her time to correctional officer's duties. At the time of the 1976 budget, Sheriff Shockley submitted conflicting written and oral documentation which the court concludes was due to clerical error. This error, however, resulted in Mrs. Brewster's salary being cut and thereby directed everyone's attention to the true situation regarding the plaintiff's employment. The parties agree that in 1977 there was no question that the plaintiff was performing the duties of a corrections officer on a full-time basis. Thus, Mrs. Brewster was certified as a deputy sheriff. Because she was certified as an entry level deputy sheriff, the plaintiff lost out on seniority and steps in the pay scale. The court finds that, clearly, the plaintiff was entitled to have been paid as a deputy sheriff and to have begun accruing seniority in 1975 when Sheriff Shockley first made the certification.

## PLAINTIFF AS AN "EMPLOYEE" WITHIN THE MEANING OF THE EQUAL PAY ACT AND TITLE VII OF THE CIVIL RIGHTS ACT

In a previous opinion in this case, the court has found that the Equal Pay Act relies upon the definitions in the Fair Labor Standards Act and that "employee" is defined in 29 U.S.C. § 203(e). The court has further found that for the purposes of Title VII of the Civil Rights Act of 1964, the word "employee" is found in 42 U.S.C. § 2000e(f). The court has also found that Mrs. Brewster was a county employee not subject to the civil service laws of Virginia and that she was selected by a holder of an elected public office. *Brewster v. Shockley*, 554 F.Supp. 365, 370 (W.D.Va.1983).

The court has left undecided the issues of whether, in Virginia, a deputy sheriff's job is tantamount to being on the Sheriff's "personal staff" and, specifically, whether Mrs. Brewster occupied this position. Since this court's earlier discussions regarding the relationship between a deputy sheriff and a sheriff, Judge Kiser has considered whether the position of deputy sheriff in Virginia is the type of job envisioned by Congress to be within the "personal staff" of an elected official and, therefore, exempt under Title VII. Judge Kiser has stated:

> The exclusive powers of selection and retention by a sheriff, the legal authority of the deputy to perform all functions and duties of sheriff, the public's perception of a deputy, the nature of the personal accountability between a deputy and sheriff, the size of the sheriff's staff, and the rural nature of Patrick County indicate to me that sheriff's deputies in Patrick County are not "employees" under Title VII.

*United States v. Gregory*, 582 F.Supp. 1319, 1325 (W.D.Va.1984).

This court is of the opinion that Judge Kiser's decision is thorough, accurate, sound, and correct. This court finds that the decision is applicable in this case since Wythe County is very comparable to Patrick County, both in size and the relationship between officials. Furthermore, the relationship between a sheriff and his deputy was recently reviewed in detail by this court. *Whited v. Fields*, 581 F.Supp. 1444 (W.D.Va.1984), dealing with the Russell County Sheriff's Department, was, to a great degree, the basis of Judge Kiser's decision. In *Whited*, this court found that, in Virginia, the relationship between the sheriff and his deputy was unique as distinguished from all other states in the Union.

In Virginia, not only is the deputy the alter ego of the sheriff, but he is, in law, one and the same. *Id.* at 1454. This court, in so finding, relied on the common law ruling in *Miller v. Jones,* 50 Va. (9 Gratt.) 584 (1853), wherein the court held that in Virginia not only is the sheriff liable civilly for the acts of his deputy, but he is also liable criminally and can be confined for the conduct of his deputy. Moreover, the court found in *Whited* that jailers and other similar employees who had the same responsibilities as the deputy also fit in the category of, and bore the same relationship to the sheriff as, a deputy sheriff. The decision of Judge Kiser is, therefore, adopted by this court and shall be applied, along with the decision in *Whited,* to this case.

■ In addition to the legal relationship existing in this case, the facts disclosed an even more personal relationship between Mrs. Brewster and Sheriff Shockley. She enjoyed a close, personal, and confidential relationship with the Sheriff, who had known her before she was employed and had, in fact, recruited her for employment. Mrs. Brewster served with the Sheriff in a confidential capacity as secretary in a room so small that their desks touched. The Sheriff placed great trust in her as a confidential employee, even permitting her to leave at her pleasure when she felt her work was completed, rather than restricting her to any particular hours. Mrs. Brewster, in fact, acted as treasurer in Sheriff Shockley's political campaign while she was working in his office. When she began to work as a corrections officer, the plaintiff reported directly to the Sheriff rather than to anyone else in the chain of command. She understood that her employment was political and that it ended with the term of the Sheriff who appointed her. The statutes are meaningless when they refer to the "personal staff" of a public official if they do not apply in this case. Therefore, the court holds that Mrs. Brewster was not an employee within the meaning of either the Equal Pay Act or Title VII.

## THE EQUAL PAY ACT CLAIM

■ As pointed out in the findings of fact, the court has found that the plaintiff performed work equal in skill, effort, and responsibility, and under working conditions similar to those of male corrections officers. She did not, however, receive pay equal to that of the male corrections officers. In the bench opinion, the court found that the plaintiff had made out a *prima facie* case under the Equal Pay Act. After a second review of the evidence and a review of the briefs in this case, the court is of the opinion that its original decision on this point is correct.

■ The pay discrepancy between Mrs. Brewster and the male employees came about because the State Compensation Board and the Board of Supervisors refused to reclassify Mrs. Brewster's job when it was requested by the Sheriff. The evidence shows that the Sheriff's request was appropriate and that there was never any evidence supporting the refusal. The court is of the opinion that the Sheriff could not be held responsible for the refusal to reclassify. The Sheriff did everything he could to see that the plaintiff was certified as a deputy sheriff except to take the case to court. The Sheriff cannot be held liable simply because he did not sue.

The court has previously stated that it was incorrect in applying the standards of proof set forth in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), to the Equal Pay Act claim. While this error was compounded by the fact that the attorneys made no objections at the time it was mentioned by the court, the court, nevertheless, assumes full responsibility for the error.

Under the Equal Pay Act, but not under Title VII, the burden shifts to the defendant once a *prima facie* case has been proven. The defendant in an Equal Pay Act case is then required to prove one of the four exceptions in Section 206(d)(1) as an affirmative defense, whereas, under Title

VII, the ultimate burden remains with the plaintiff throughout the case. The distinction was explained in *Melanson v. Rantoul,* 536 F.Supp. 271, 286, 32 F.E.P. Cases 1025, 1035 (R.I.1982), where the court stated:

> The legal standard is quite different from the legal standard employed in a claim brought solely on the basis of Title VII. As already explained, under Title VII once the plaintiff has established a *prima facie* case the defendant need only *articulate* a legitimate, non-discriminatory reason for the action claimed to be discriminatory. *McDonnell-Douglas,* supra; Texas Department, supra at 4216. Once this articulation is made in a Title VII action, the plaintiff must then establish that the articulated reason given by the defendant was a pretext for unlawful sex discrimination. Id. In a case brought exclusively under Title VII, the burden of proof never shifts to the defendant: under the Equal Pay Act, however, the burden of proof does shift to the defendant once the plaintiff meets the initial *prima facie* burden.

*Citing Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). *See also Kouba v. Allstate Insurance Co.,* 691 F.2d 873 (9th Cir.1982).

The court is of the opinion that the defendants have not successfully met their burden to prove any of the four affirmative defenses set forth in Section 206(d)(1). The Board of Supervisors and the State Compensation Board knew that Mrs. Brewster, who was the only female employee with the Sheriff's department, was not being paid the same wages for the same position as the male employees. Moreover, they made no effort to determine whether the statements made by the Sheriff with regard to the plaintiff's position were correct. Thus, the county Board of Supervisors and the State Compensation Board, individually and in their official capacities, violated the Equal Pay Act.

Although the Boards' actions violated the Act, the court is of the opinion that the violation was not willful because they did indeed believe, though incorrectly, that Mrs. Brewster was not devoting more than fifty percent of her time to correctional work. In addition, when the Board of Supervisors and the Compensation Board eventually did give the plaintiff a raise, they thought they were acting properly within the seniority system in not allowing the plaintiff's claim for back pay.

■ Despite the finding that the Board of Supervisors and the State Compensation Board violated the Equal Pay Act, this court must hold in favor of the defendants on this claim in view of the finding that Mrs. Brewster was not an employee within the meaning of the Act.

### THE TITLE VII CLAIM

The plaintiff has devoted a great deal of time in her briefs before the Fourth Circuit on the issue of disparate treatment. The court, however, does not view this as a disparate treatment case and plaintiff's own facts fail to support a disparate treatment claim. Accepting most of the plaintiff's proposed findings of fact, the court finds that Findings of Fact Numbers Nineteen through Thirty-Seven specifically show that the plaintiff was not the victim of disparate treatment. Without repeating all of these since they are set out in the court's findings of fact, the court notes that Mrs. Brewster took care of male and female prisoners and juvenile offenders; that, like male corrections officers, she searched visitors to the jail and transported prisoners; that she acted as chief jailer; that she handled violent prisoners; that she handled mail and kept jail record sheets for all prisoners, male and female; and that she was on call at all times and worked more hours than a typical male corrections officer. Moreover, as stated in the plaintiff's proposed findings of fact, there was no significant difference between the work performed by Mrs. Brewster and the male corrections officers, both having equal responsibility and authority. Plaintiff had the same training experience as did the male corrections officers and was fully capable of supervising male and female pris-

oners. Thus, the court does not consider the disparate treatment argument to be of any significance. The argument was not considered at the time the bench opinion was rendered and does not merit consideration at this time.

Throughout this case, the court has seen the plaintiff's claim as her failure to receive the pay to which she was entitled, and as recommended by the Sheriff, simply because the Board of Supervisors and the Compensation Board chose to overrule the Sheriff. The Sheriff's treatment of the plaintiff has not been the true issue.

The correct test to apply in a Title VII case is set forth in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This court is of the opinion that the plaintiff made out a *prima facie* case under *McDonnell-Douglas* and *Burdine* in that she showed she was not paid the same as her male counterparts who were also corrections officers, she devoted more than fifty percent of her time to her corrections officer's duties during the time she was attempting to get corrections officer's pay and she was repeatedly turned down for that pay. The defendants, the Board of Supervisors and the State Compensation Board, articulated a non-discriminatory reason for refusing, prior to 1977, to pay the plaintiff equally, namely, that the law required that a person devote more than fifty percent of her time to correctional duties.

■ The stated non-discriminatory reason was, in reality, incorrect in that the plaintiff was devoting more than fifty percent of her time to corrections duties. Nevertheless, it was the belief of the Board of Supervisors and the reason it gave to the Compensation Board for not certifying the plaintiff as a corrections officer. The Compensation Board accepted this as true and, consequently, did not certify the plaintiff for an increase in pay. The plaintiff has failed to rebut the evidence that these defendants honestly believed their stated reason for refusing to certify her. Thus,

the court finds that the Board of Supervisors and the State Compensation Board did not base their decisions upon sex and, as a result, did not violate Title VII.

### THE CLAIM UNDER 42 U.S.C. § 1983

Initially, the court notes that, in the briefs filed in the Court of Appeals, the plaintiff has asserted a substantive due process violation. However, the facts here are not aggravated and thus any attempt to argue the due process violation is doomed to failure. *See generally Hall v. Tawney,* 621 F.2d 607 (4th Cir.1980). Furthermore, no Equal Protection violation has occurred since no intentional discrimination, a necessary element of an employment discrimination case, was proven. *See Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).

The court also notes that defendants argued, in post trial motions, that the case was not tried and there was no allegation of any violation under 42 U.S.C. § 1983. The complaint in this case clearly sets out that the "defendants deprived the plaintiff of her right to equal protection of the law and due process under the Fourteenth Amendment of the United States Constitution." In this Circuit, nothing could be more clear than the duty of the court, in a Section 1983 action, to give a liberal interpretation to the pleadings, to consider any claim that a plaintiff could raise and, if necessary, to assist the plaintiff in amending her pleadings so that she may proceed with her claim. The defendants knew that the Section 1983 claim was in the suit. It is absurd for them to argue that the case was not tried under 42 U.S.C. § 1983 or that the court should not give liberal construction to the pleadings. The court shall, therefore, consider the merits of the plaintiff's Section 1983 claim.

■ With regard to this issue, the defendants' argument that the decision of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), may not apply to this case is without merit. Nothing in the decision bars its retroactive application.

Generally, unless a decision changes the law, it is retroactive. *Solem v. Stumes,* — U.S. ——, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984). Moreover, unjustified reliance upon a prior rule of law is no bar to retroactive application of a new constitutional decision. *Id.* 104 S.Ct. at 1343. The decision in *Parratt* did not change the law under Section 1983 but, rather explained the scope of Section 1983 with regard to Fourteenth Amendment claims. The court finds, balancing the benefits against the hardship created by retroactive application, that *Parratt v. Taylor* is properly applied here.

In *Parratt v. Taylor,* the Supreme Court set forth the elements necessary to show a Fourteenth Amendment violation under Section 1983: the act complained of must have been under color of state law; there must have been a deprivation of property; and the deprivation must have been without due process of law. There can certainly be no argument as to the first requirement. The denial of equal pay constituted state action as to all three defendants—the Sheriff, the Board of Supervisors, and the State Compensation Board.

As to the second requirement, the defendants contend that the plaintiff had no property right and that, therefore, no deprivation of property occurred. To support this contention, the defendants point out that a deputy sheriff does not have a property right in public employment. This, of course, is very true, but this rule regarding the right to employment has nothing whatsoever to do with this case. Mrs. Brewster was already employed and did not question the termination of her employment. The question, simply stated, involves the amount of pay she received while employed with the Sheriff's Department. Thus, the court must determine whether the plaintiff had a property right in the amount of pay she was to receive.

■ In deciding whether a person has a property right, the court must look to state law. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In that case, the Court stated:

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577, 92 S.Ct. at 2709. This court is of the opinion that several statutory provisions in Virginia give this plaintiff a property right. Section 14.1–73.2 of the Code of Virginia sets forth salaries of full-time deputies sheriff who have met certain standards. While establishing minimum salaries, the statute further authorizes the State Compensation Board, in its discretion, to fix a salary which exceeds the minimum as long as the deputy sheriff's salary does not exceed ninety percent of the Sheriff's salary. Thus, assuming that the plaintiff meets certain minimum standards, the statute requires that she be paid a minimum salary. The court, in finding that the plaintiff devoted more than fifty percent of her time to corrections work, has found that she met the minimum standards of Section 14.1–73.2. Mrs. Brewster was, as a result, entitled to the minimum salary and had a property right under the statute.

In addition to the minimum standards established for qualification as a deputy sheriff, numerous other factors were to be considered by the Compensation Board with which to determine whether a greater salary should have been awarded to a deputy sheriff. Section 14.1–73 set out factors to be used in fixing the salaries of the Sheriff and his full-time deputies. The section stated the Compensation Board

shall take into consideration the length of service of such sheriff or deputy, the population and area of the county or city for which he is elected or appointed, whether a sheriff also served a second-class city wholly within his county or county and city as the case may be, the number of persons committed to the jail thereof, the aggregate number of days spent by prisoners in the jail thereof, the

compensation previously received by the sheriff and each of his full-time deputies, the amount of fees collected by such officers and such other factors as the Compensation Board deems proper. No salary shall be reduced by reason of a change of population during the term for which a sheriff was elected.

A review of these statutes reveals that although the Compensation Board has some discretion, it is also subject to certain mandatory provisions. Thus, the plaintiff was entitled to have her further qualifications considered by the Compensation Board. The refusals by the Board to award Mrs. Brewster the minimum salary for a full-time deputy sheriff and to further consider her for a higher salary constituted deprivations of property.

The court next considers whether the state provided a remedy and, therefore, afforded the plaintiff due process of law. Under *Parratt, supra,* if an adequate post-deprivation remedy existed, no cause of action would lie under Section 1983. It is this court's opinion that Mrs. Brewster was without a remedy under state law. There is no provision in the Code of Virginia for an employee of a constitutional officer to be heard with regard to salary.

The budget for all constitutional officers is arranged by section 14.1–50 of the Code of Virginia. It states that the Sheriff, along with the Commonwealth's Attorney and other constitutional officers, shall each year prepare a budget and present a written request for the allowance of his salary for the expenses of his office, and for the salaries of all others working under him. The chairman of the State Compensation Board may, from time to time, submit to any such officer a written questionnaire to ascertain the facts relevant to a determination of the proper allowance. This questionnaire must be completed and returned to the Compensation Board before a final decision may be made.

When the Compensation Board has fixed the salaries and expenses in the various counties and cities, according to Section 14.1–51, it must notify each governing body. The governing body, but no one else, is granted the right to file an objection to the Compensation Board's decision.

Upon consideration of these sections, the court finds no administrative remedy provided to a person in Mrs. Brewster's situation. Indeed, she is specifically denied involvement in the process or a hearing regarding the outcome. The Sheriff submits the budget, the Compensation Board renders the final decision, and only the Board of Supervisors can request a rehearing from the Compensation Board.

The right to go to court regarding the Compensation Board's decision is governed by Section 14.1–52 of the Code of Virginia which permits an appeal to be made by one of three persons—the officer, in this case the Sheriff, whose budget is affected; the county, through the Board of Supervisors; and the Attorney General, on behalf of the state. On such an appeal, the case is heard by a three-judge court set up specifically for the matter. Section 14.1–52 designates not only who may appeal, but also states that "no other" may appeal. Therefore, employees of constitutional officers, such as Mrs. Brewster, have no right to appeal to the state courts. As a result, the plaintiff was without a due process procedure whereby she could assert her right to a full-time deputy's pay. She was entirely dependent upon the actions taken by others.

The defendants argue that the plaintiff was provided a remedy through Section 2.1–223.1 and the following sections of Code of Virginia. Section 2.1–223.1 provides a method whereby persons having pecuniary claims against the Commonwealth may present claims to a department head or, if there is no department head, to the Comptroller. Under the statute, if the claim is denied by the authorized person, the claimant has the right to petition the appropriate circuit court for redress. It is a well-settled rule of law, however, that:

when one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized,

if possible, and where they conflict, the latter prevails.

*Virginia National Bank v. Harris,* 220 Va. 336, 257 S.E.2d 867, 870 (1979), *citing* 2A Sutherland *Statutory Construction* § 51.05 (4th ed. C. Sands 1973). Sections 14.1–52 and 2.1–223.1 clearly speak to the same subject and are in conflict. To allow the plaintiff to sue under the general statute would render the specific statute meaningless. Thus, Section 14.1–52 prevails in Mrs. Brewster's case and acts to deny her any due process remedy. The defendant's argument that the plaintiff had a state procedure in which to seek a remedy and that their defense of sovereign immunity did not deny due process does not, as a result, apply to this case because the plaintiff did not have an opportunity to raise her claims in state court.[1] As to the liability of the parties in this action, sovereign immunity would not bar relief against the county board of supervisors. *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). While the members of the Compensation Board, in their official capacities, may have been entitled to immunity, this court finds that they are liable individually as well as in their official capacities and that, therefore, sovereign immunity will not protect them from liability.

The court further finds that the defendants are not entitled to qualified immunity. Under *Parratt* and the Fourth Circuit cases construing the decision, negligent deprivation of property without due process of law may state a cause of action under Section 1983. *Ausley v. Mitchell,* 748 F.2d 224 (4th Cir.1984); *Daniels v. Williams,* 748 F.2d 229 (4th Cir.1984). The defendants' failure to ascertain the true facts and failure to pay the plaintiff the salary to which she was entitled was negligence upon the part of the Compensation Board and the Board of Supervisors.

■ Under the law at the time of the plaintiff's employment with the Wythe County Sheriff's Department, the defendants should have known that denial of the statutory salary to a full-time deputy would deprive the deputy of her rights. Moreover, even assuming the defendants believed that they had not wronged the plaintiff, the court finds that their belief was unreasonable in that the refusal to certify the plaintiff was wholly without factual support. Thus, the defense of qualified immunity will not act to insulate the defendants from liability. *See Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); and *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## ATTORNEY'S FEES

The granting of attorney's fees in Section 1983 cases is permitted pursuant to Section 1988 of Title 42. The guidelines for awarding such fees are set forth as twelve factors in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) and *Barber v. Kimbrell's, Inc.* 577 F.2d 216 (4th Cir.1978). This court shall, therefore, apply these factors to the case at hand.

*Time and Labor Expended* —The time expended by plaintiff's counsel, as submitted to the court, was 235.95 hours, beginning in March, 1980, and ending in April, 1983. The court accepts this as the time expended for several reasons. First, no evidence was offered to refute this amount. Unless shown the contrary, the court must accept the statement, made under oath and by an officer of the court, as true. In addition, the plaintiff's attorney asserted to the court that 235.95 hours is a conservative figure and does not include a great deal of her time for which no record was kept. Nor does this figure include the time of Mrs. Long, the partner of Mrs. Brewster's attorney, who also worked on the case. Both of the plaintiff's attorneys stated under oath that no more than twenty to thirty hours could be attributed to claims upon which the plaintiff did not prevail and that they attempted to limit dis-

---

1. As to the effect of the defense of sovereign immunity in state court upon a plaintiff's due process rights, *see Waterstraat v. Central State Hospital,* 533 F.Supp. 274, 276 (W.D.Va.1982).

covery and other procedures to a reasonable level.

*The Novelty and Difficulty of the Questions Raised* —All one has to do is to look at the first opinion in this case to ascertain the novelty of the questions presented. The Court was of the opinion that the questions answered at that time where so unique that the case should be published. That opinion, which did not decide the case, required over one hundred hours of the court's time even after the issues had been briefed. The novelty of the case is further illustrated by this opinion in which much reconsideration was required in light of the changing law. Several new rulings have been handed down since this court's original bench opinion. In fact, the court knows of few cases in which a person had more novel issues to develop than did the plaintiff in this case—to mention a few: whether a person is an employee within the Equal Pay Act and Title VII; the whole spectrum of immunity questions; the statute of limitations questions; burden of proof questions; and the tangled web of the relationships between the State Compensation Board, the County Board of Supervisors, and the Sheriff.

*The Skill Required to Properly Perform the Legal Services Rendered* —To represent a plaintiff in this type of case, more skill is required than in any other case, with the possible exception of patent or antitrust cases. Moreover, in many rural counties in Virginia, no attorney will handle a civil rights suit against county officials. It is simply a situation in which they do not want to "buck" the establishment. Furthermore, it requires skill that a general practitioner does not have. A person who handles a small number of civil rights cases requires much more research time than a large firm specializing in this type of work.

*The Attorney's Opportunity Costs in Pressing the Instant Litigation* —In this type of case, the attorney must go into the litigation prepared to spend some of his own time and money. Usually, civil rights claimants are not in a position to advance costs. In fact, one attorney approached by Mrs. Brewster wanted an advancement on costs and to be paid on an hourly basis and, therefore, exceeded her ability to pay. In addition, a great deal of travel time was involved. This expense and time away from the office has to be borne by the attorney.

*The Customary Fee for Like Work* —In federal court there is what is known as a weighted caseload. The lowest paid cases are disability social security and prisoners' cases, wherein $100.00 per hour is generally allowed. Clearly, a greater amount of skill was required in this case. The court was, therefore, surprised to note that the maximum rate requested by the plaintiff's attorney was $80.00 per hour. This court is of the opinion that this is below the normal hourly fee in view of the length of time the plaintiff's attorneys have been practicing law.

*The Attorney's Expectations at the Outset of the Litigation* —The plaintiff's attorney, at the outset, had to look forward to an extensive amount of discovery and to a considerable amount of brief writing and research. Because salaried attorneys representing the state would raise every technical point possible, and would oppose any settlement, the attorney had to expect that the case would be hard-fought. In addition, so that the attorney would not be accused of malpractice, the attorney would have to bring suit under every possible legal theory. Thus, the attorney could expect to spend a great deal of time and effort, but could not, given the amount in dispute, expect a large fee. This, in itself, caused a number of attorneys to refuse the plaintiff's case.

*The Amount in Controversy and the Results Obtained* —The attorney obtained for the plaintiff in this case the maximum that could have been obtained unless willful violation of the Equal Pay Act could have been proven. Although the amount in controversy was small, the case was complicated during the pendency of the first suit by the termination of the plaintiff's employment with the Sheriff's Department.

This action by Sheriff Pike resulted in commencement of the second suit and a greatly increased potential recovery. Only by Mrs. Brewster's getting another job and thereby minimizing her damages was the larger claim removed from the case.

*The Experience, Reputation and Ability of the Attorney* —The court finds that the plaintiff's attorney had exhibited ability in this type of case. Although the defendants have attempted to minimize the value of the attorney's experience by pointing out that she had handled only four or five sex discrimination and civil rights cases prior to this one, this, in a rural community, constitutes considerable experience. Furthermore, the fact that the plaintiff traveled from Wytheville to Blacksburg, Virginia to employ this attorney shows that counsel had developed a stable reputation in the community.

*The Undesirability of the Case Within the Legal Community in Which the Suit Arose* —This court has personal knowledge of the plaintiffs attempts to obtain counsel from civil rights firms in Abingdon, Virginia where this case was tried. Several attorneys, subsequent to the trial, advised the court that the plaintiff had approached them. They felt, however, that the case was not strong enough or that too little money was involved to take the case on a contingency basis. When they required her to advance "front money" and pay by the hour, the plaintiff was unable to do so. Furthermore, the plaintiff consulted lawyers in Wythe County, none of whom was willing to take the case because they felt it was undesirable to bring suit against the establishment. Thus, the plaintiff was forced to retain a lawyer in Blacksburg since the case was undesirable in the legal community in which the suit arose.

In addition to the difficulty in proving the plaintiff's case, the small amount of money involved, and the hesitancy on the part of attorneys to sue the establishment, prospective counsel could not expect settlement. When the possibility of settlement was raised by this court, the Assistant Attorney General representing the State Compensation Board stated that it was the policy of the Attorney General not to settle any of these cases. It was obvious to the court that the state used its power to try to force an undesirable settlement.

*Nature and Length of Professional Relationship Between the Attorney and Client and Attorney's Fees Awards in Similar Case* —The record in this case does not indicate how long the plaintiff was acquainted with her attorneys prior to the professional relationship developed in this suit. Apparently, however, there was no previous relationship given the distance the plaintiff had to travel to find them. In addition, because of this distance, the attorneys cannot expect repeat business from the plaintiff. This court agrees with the statement of the plaintiff's counsel that, "Unless private attorneys are adequately compensated for their efforts in these cases, a citizen's right to obtain redress will also be rendered meaningless."

In other civil rights cases, such as where a police officer has assaulted a person while making an arrest, the court has awarded attorney's fees. The assault cases are similar to the present case in view of the perceived undesirability of suing police officers and the low success rate in these cases. Such cases, however, are relatively easy in comparison with the instant case—the case law is not complex, less preparation is required, and there is no need for extensive research. Nevertheless, in the assault cases, the court awards inexperienced attorneys $75.00 per hour and more experienced attorneys at least $100.00 of $125.00 per hour. Similarly, in disability social security cases, considered by the Administrative Office of the United States Courts to be low-weighted cases, the court allows $100.00 per hour. Thus, the allowance of $80.00 per hour is far below that routinely allowed by this court for less complicated cases.

The court, finally, turns to the case of *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), which was decided shortly after this court made its original award of attorney's fees to Mrs.

Brewster's attorney. In *Hensley,* the Court stated:

> Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. On remand the District Court should determine the proper amount of the attorney's fee award in light of these standards.

*Id.* 103 S.Ct. at 1943.

█ Applying the foregoing rule to this case, the court finds that all of the plaintiff's claims were related and were designed to reap one form of relief. The plaintiff sought, at all times, to be paid the same amount as the male deputies sheriff in Wythe County from the time she was qualified and was recommended for that pay. The result in this case was absolute and total success for the plaintiff. Moreover, the evidence of the plaintiff's attorney is that the plaintiff was entirely satisfied with the award of the court because the court gave her the amount to which she was entitled and, therefore, all that she asked for. Further, the favorable effect for people similarly situated in Wythe County and throughout Virginia added to Mrs. Brewster's satisfaction. A judgment in favor of the plaintiff on all the issues presented would not have resulted in a greater award of money. Thus, it is immaterial on which issue the court made the award—the plaintiff's success was complete. In accordance with the standards set out in *Hensley,* the court has no reason to change the fee originally provided.

The Court does note, however, that a mathematical error was made in calculating the award. The amount of the attorney's fee should have been $18,800.00, plus court costs. Accordingly, the attorney's fee will be modified by the appropriate Order.