Joyce H. BREWSTER, Appellee,

v.

George F. BARNES; W.H. Forst and Charles K. Trible, Appellants,

and

G. Wayne Pike; Buford E. Shockley, former Sheriff of Wythe County; Wythe County, Virginia; Wythe County Board of Supervisors; George F. James; James E. Hagee; Ralph L. Blair; Garland Groseclose; Willard M. Smith; John King, Jr.; C.D. Moore, Jr.; J. Addison Jones; James E. Dunkley and Compensation Board, Defendants.

Joyce H. BREWSTER, Appellant,

v.

G. Wayne PIKE; Buford E. Shockley, former Sheriff of Wythe County; Wythe County, Virginia; Wythe County Board of Supervisors; George F. James; James E. Hagee; Ralph L. Blair; Garland Groseclose; Willard M. Smith; John King, Jr.; C.D. Moore, Jr.; J. Addison Jones; James E. Dunkley; Compensation Bd. of Virginia; George F. Barnes; W.H. Forst and Charles K. Trible, Appellees.

Nos. 83–1582(L), 83–1830.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1985.

Decided April 10, 1986.

finding to be made upon collection efforts by    the authorities.

Harriet D. Dorsey (Dorsey & Long, Blacksburg, on brief) for appellant/cross-appellee.

Kenneth W. Thorson, Sr. Asst. Atty. Gen., Richmond, Va., James P. Jones

(Penn, Stuart, Eskridge & Jones; Abingdon; William G. Broaddus, Atty. Gen., Barbara M. Rose, Asst. Atty. Gen., Gerald L. Baliles, Atty. Gen., Richmond, Va., on brief) for appellees.

Before SPROUSE and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

SPROUSE, Circuit Judge:

Defendants George F. Barnes, W.H. Forst, and Charles K. Trible, members of the Compensation Board of the Commonwealth of Virginia, appeal from the district court's judgment awarding damages and attorneys' fees to Joyce H. Brewster for negligent deprivation of constitutionally secured property rights under 42 U.S.C. § 1983 (1982). Brewster cross-appeals the district court's judgment denying her claims of sex discrimination by all the defendants [1] in violation of, among other things, Title VII [2] and the Equal Pay Act.[3] We reverse the district court's § 1983 judgment in favor of Brewster. We also reverse the court's Equal Pay Act judgment in favor of the Compensation Board, the Wythe County Board of Supervisors, and their respective members. We affirm the district court's Title VII judgment in favor of all the defendants. The net result is that we affirm the amount of the district court's award to Brewster, but we hold the Compensation Board, the Board of Supervisors, and their respective members jointly liable under the Equal Pay Act.

## I.

The Wythe County, Virginia Sheriff's Department employed Brewster from June 1968 to December 1979. At all times during her employment, Buford E. Shockley was the Sheriff and her ultimate supervisor. From 1968 to 1974, Brewster performed primarily secretarial work for Shockley, who had hired her with an oral understanding that her job would end when Shockley left office. In early 1974, Brewster began working as a substitute matron for female and juvenile prisoners housed at the Wythe County jail, although she remained primarily a secretary to Shockley. After the regular matron took a medical leave of absence in March 1974, Brewster was appointed to the position of deputy sheriff. Later that spring, she completed Correctional Officers Training School along with several male deputies. At that point, Brewster began performing primarily the duties of a correctional officer rather than a secretary, although she continued to perform secretarial tasks for a time.

In order for a deputy sheriff to receive the salary of a correctional officer, the county sheriff and the county board of supervisors each had to certify to the Compensation Board that the deputy spent more than fifty percent of his or her time on the job performing the duties of a correctional officer.[4] Once the Compensation Board received both certifications, it routinely approved the pay requests for that deputy. Shockley first certified that Brewster's duties as a correctional officer occupied more than fifty percent of her time in June 1974. The Wythe County Board of Supervisors, however, refused to certify Brewster. It based its refusal on the low number of female prisoners housed in the jail and Brewster's continued concomitant work as a secretary for Shockley. As a result of the Board of Supervisors' refusal to certify Brewster, the Compensation Board declined to pay her the higher salary of a correctional officer.

---

**1.** In addition to the individual members of the Compensation Board, the defendants in these consolidated cases include the Compensation Board itself, the Wythe County Board of Supervisors, the individual members of the Board of Supervisors, and former Wythe County Sheriff Buford E. Shockley.

**2.** 42 U.S.C. § 2000e *et seq.* (1982).

**3.** 29 U.S.C. § 206(d) (1982).

**4.** Under Virginia law, the Compensation Board, a state governmental entity made up of three members, is required to fix the salaries of numerous individual city and county employees, including deputy sheriffs. Va.Code. § 14.1–51 (1978).

In December 1974, the Board of Supervisors authorized the creation of a new full-time matron position at the jail. Shockley's daughter filled the position and worked the night shift. Brewster was then working primarily as a matron at the jail during the day shift. Shockley's daughter resigned the full-time matron position in March 1975. On March 18, 1975, Shockley again certified Brewster to the Compensation Board as a correctional officer. He stated that she would be taking over the full-time position created in December 1974 which Shockley's daughter first occupied. The Board of Supervisors, however, again refused to co-certify that Brewster was working primarily as a correctional officer, and the Compensation Board again declined to pay her the higher salary.

When Shockley moved his office from the jail to the courthouse in September 1975, the Sheriff's Department hired a new secretary to assume Brewster's remaining secretarial duties. Brewster and Shockley testified that from that point until her employment with the Department ended in 1979 she spent one hundred percent of her time performing the duties of a correctional officer. As the matron, Brewster was responsible for female and juvenile prisoners in the jail. In addition to that task, she also transported prisoners, handled violent prisoners, occasionally supervised male prisoners, searched visitors to the jail, served as chief jailer when required, sorted prisoner mail for inmates of both genders, and kept the jail record sheet for all prisoners. Shockley and Brewster both testified that any clerical functions she performed in the jail consumed no more than ten percent of her time on the job. Male correctional officers worked at the jail forty hours per week in regular eight-hour shifts five days per week. Brewster worked three twelve hour shifts per week and was on call twenty-four hours a day, seven days a week.

Shockley certified Brewster to the Compensation Board as a correctional officer for a third time in March 1976. The Board of Supervisors once again refused to co-cer-

tify Brewster, and the Compensation Board refused to raise her salary. Not to be deterred, Shockley certified Brewster for a fourth time on July 6, 1977. On this occasion, the Board of Supervisors finally agreed that Brewster should be paid as a correctional officer, and it furnished the necessary co-certification on July 13, 1977. The Board of Supervisors recommended that Brewster's salary be adjusted effective July 1, 1977. The Compensation Board agreed and raised her salary to the starting salary for a correctional officer with no experience. As a result, Brewster's new salary was significantly lower than that of male correctional officers who had been certified in 1975. Shockley testified, however, that Brewster's duties were the same from 1975 through 1979, and that her July 1977 certification did not stem from any change in her duties at that time.

Brewster initially brought suit in the district court under the Equal Pay Act, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 against Shockley, the Board of Supervisors and its members, and the Compensation Board and its members. The district court dismissed the § 1985 claim and dismissed Shockley as a defendant altogether.[5] Brewster then brought a Title VII action against all the above defendants, including Shockley. The two cases were consolidated for a trial to the bench.

In a bench opinion delivered at the conclusion of the trial, the district court ruled in favor of the defendants on the Equal Pay Act claim, the Title VII claim, and the § 1983 claim of denial of equal protection. The court ruled in favor of Brewster on her § 1983 claim of deprivation of property without due process of law. The district court entered judgment against all the defendants except Shockley and the Compensation Board, holding that Shockley was not culpable and that the Compensation Board was protected by sovereign immunity. After the parties stipulated the amount of damages, the court awarded Brewster $2,777.25 in back pay with interest. The district court also awarded her

5. Brewster has not appealed the dismissal of her § 1985 claim.

$18,800 in attorneys' fees and costs. Acting on post-trial motions, the district court later set aside the judgment against the Board of Supervisors and its members on the grounds that the § 1983 claim against them was barred by the statute of limitations. Brewster and the individual members of Compensation Board appealed the various judgments against them.

Upon receipt of the appeal, we remanded the case to the district court for additional findings of fact. Fed.R.Civ.P. 52. The district court then reported its revised findings of fact and conclusions of law. *Brewster v. Pike*, 608 F.Supp. 1163 (W.D.Va. 1985). In its revised decision, the district court ruled that the Board of Supervisors, the Compensation Board, and their respective individual members all violated the Equal Pay Act by denying Brewster equal pay for performing the same work as the male correctional officers. The court ruled as a matter of law, however, that Brewster was not an "employee" under the Equal Pay Act; therefore, she could not recover on that claim. The district court ruled that none of the defendants violated Title VII because they did not intentionally discriminate against Brewster because of her sex. The court reiterated its earlier ruling that both the Board of Supervisors and the Compensation Board violated § 1983 by negligently depriving Brewster of her property right in the salary of a correctional officer. The district court held the members of the Compensation Board individually liable under § 1983, but ruled that the § 1983 claim against the Board of Supervisors and its members was barred by the statute of limitations. The court awarded Brewster the same amounts of back pay with interest, costs, and attorneys' fees.

## II.

■ The Supreme Court recently held "that the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property." *Davidson v. Cannon*, — U.S. —, —, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986); *Daniels v. Williams*, — U.S. —, —, 106 S.Ct. 662, 664–667, 88 L.Ed.2d 662 (1986). Thus, the district court's finding that the defendants were negligent in failing to pay Brewster the higher salary of a correctional officer will not support a claim for deprivation of property without due process of law under § 1983. Accordingly, the district court's § 1983 judgment in favor of Brewster must be reversed.[6]

## III.

■ The district court held that Brewster could not recover under the Equal Pay Act because she was not an "employee" for purposes of the Act. Specifically, the district court ruled that Brewster fell within the "personal staff" exemption contained in the Equal Pay Act's definition of "employee." The Equal Pay Act defines "employee" to include:

[a]ny individual employed by a State, political subdivision of a State, or an interstate governmental agency, other than such an individual—

(i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and

(ii) who—

(I) holds a public elective office of that State, political subdivision, or agency, [or]

(II) is selected by the holder of such an office to be a member of his personal staff....

29 U.S.C. § 203(e)(2)(C) (1982). The defendants do not deny that Brewster was "employed by" the defendants and that they were her "employers." In addition, Brewster acknowledges that she was selected to be a deputy sheriff by an elected public official, Shockley, and that she was not

---

**6.** Since we hold, *infra,* that the district court's finding that the defendants' conduct was not shaped by a gender-based discriminatory purpose is not clearly erroneous, there was similarly no violation of the equal protection clause actionable under § 1983. *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 274, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979).

subject to Virginia's civil service laws. Thus, the only issue is whether Brewster's job as a deputy sheriff was tantamount to being on the sheriff's "personal staff."

We previously decided a similar issue in *Curl v. Reavis,* 740 F.2d 1323 (4th Cir. 1984). In *Curl,* we considered whether a deputy sheriff in North Carolina was a member of the sheriff's personal staff for purposes of Title VII.[7] We held that the question is one of federal law. State law is only relevant "insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised and fired." *Id.* at 1327 (quoting *Calderon v. Martin County,* 639 F.2d 271, 272–73 (5th Cir. 1981)). We also noted in *Curl* that the legislative history of Title VII indicates that "Congress intended for the personal staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official." *Id.* at 1328 (quoting *Owens v. Rush,* 654 F.2d 1370, 1375 (10th Cir.1981)). After considering the facts surrounding Curl's employment, we concluded that she was not a member of the sheriff's personal staff. *Id.* We expressly refused, however, to decide the broad issue of whether or not all deputy sheriffs are on the sheriff's personal staff. This task was left to a case-by-case inquiry requiring "a careful examination of the nature and circumstances of [the plaintiff's] role in the Sheriff's Department." *Id.*[8]

Our inquiry into the nature and circumstances of Brewster's role in the Wythe County Sheriff's Department leads us to conclude that she was not a member of Shockley's personal staff. Initially, we discern no significant difference between the legal relationship of sheriffs and deputies in North Carolina, as discussed in *Curl,* and in Virginia, as relevant here. Sheriffs in both states have the statutory authority to hire, supervise, and fire their deputies. N.C.Gen.Stat. § 153A–103 (1983); Va. Code § 15.1–48 (1981). Deputies in Virginia "may discharge any of the official duties of their principal," Va.Code § 15.1–48 (1981), while their counterparts in North Carolina may "assist [the sheriff] in performing his official duties," N.C.Gen.Stat. § 162–24 (Supp.1985). Moreover, courts have described the status of deputies in both states as "one and the same as the sheriff." *Whited v. Fields,* 581 F.Supp. 1444, 1454 (W.D.Va.1984); *Styers v. Forsyth County,* 212 N.C. 558, 564, 194 S.E. 305, 308 (1937).

The defendants argue that this case is distinguishable from *Curl,* however, because of the personal relationship between Brewster and Shockley. The defendants stress the close nature of Brewster's position as Shockley's personal secretary, which even extended to Brewster serving as treasurer in Shockley's 1975 reelection campaign. Brewster served as Shockley's secretary, however, only from 1968 to 1975. The time frame of our inquiry must be the period from 1975 to 1979 in which the discrimination purportedly occurred. Immediately prior to the 1975 election, Shockley hired a new personal secretary because Brewster was then working full time as a correctional officer at the jail. The evidence reveals that any close working relationship which existed between Brewster and Shockley prior to 1975 had essentially ended once Shockley moved his office out of the jail, while Brewster remained behind as a full-time correctional officer. From 1975 to 1979 Brewster, like the deputy in *Curl,* did not occupy an intimate or high-level position in the Sheriff's Department,

---

7. The definition of "employee" in Title VII contains a "personal staff" exemption which is essentially identical to the exemption contained in the Equal Pay Act. *Compare* 42 U.S.C. § 2000e(f) (1982) (Title VII) *with* 29 U.S.C. § 203(e)(2)(C) (1982) (Equal Pay Act).

8. Other courts have reached differing results on the question of whether deputy sheriffs fall within the "personal staff" exemption. *Compare Howard v. Ward County,* 418 F.Supp. 494 (D.N.D.1976) (deputy sheriff is an "employee" under Title VII) *with Kyles v. Calcasieu Parish Sheriff's Dept.,* 395 F.Supp. 1307 (W.D.La.1975) (deputy sheriff is not an "employee" under Title VII).

nor did she make policy decisions. Rather, she performed the same functions as the other correctional officers at the jail: handling, transporting, and supervising prisoners; searching visitors; and various jobs such as recordkeeping, cooking, and cleaning. In short, under the rationale of *Curl*, Brewster was not a member of Shockley's personal staff. Since she otherwise qualified as an "employee" under the Equal Pay Act, Brewster was entitled to pursue her claims of wage discrimination under the Act.

■ Since we reverse the district court and hold that Brewster was an "employee" under the Equal Pay Act, we must review the merits of her wage discrimination claim. The district court held that Brewster established a prima facie violation of the Equal Pay Act by showing (1) that she was receiving lower wages than the male correctional officers (2) for equal work requiring equal skill, effort, and responsibility. 29 U.S.C. § 206(d)(1) (1982); *see Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). The defendants challenge the district court's holding that Brewster's position required the same skill, effort, and responsibility as that of male correctional officers. They contend that because of the greater number of male inmates in the jail, male correctional officers were responsible for handling more inmates than Brewster. According to the defendants, this difference caused Shockley to assign Brewster to a multitude of lesser, clerical duties, such as records clerk, mail sorter, fingerprinter, and cook. Thus, the defendants contend that the work performed by male correctional officers entailed greater effort and responsibility than what was required of Brewster.

The test, of course, is whether the work is substantially equal. *Brennan v. Prince William Hospital Corp.*, 503 F.2d 282, 285 (4th Cir.1974), *cert. denied*, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975). "The crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e., whether a sig-nificant portion of the two jobs is identical. The inquiry then turns to whether the differing or additional tasks make the work substantially different." *Brobst v. Columbus Services International*, 761 F.2d 148, 156 (3d Cir.1985); *see Prince William Hospital Corp.*, 503 F.2d at 285–86. The record in the instant appeal shows the existence of a "common core" of tasks. In its findings of fact, the district court found that Brewster and the male correctional officers both supervised inmates, transported prisoners, searched visitors, and served as chief jailor when necessary. "Like the male correction officers, she spent one hundred percent of her time fulfilling the duties of a corrections officer." *Brewster v. Pike*, 608 F.Supp. 1163, 1167 (W.D.Va. 1985). Shockley testified that there was no difference between the work performed by Brewster and her male counterparts. Although the male correctional officers may have been generally responsible for the more numerous male inmates, we find this fact outweighed by evidence that Brewster, the sole female officer, was responsible for all female and juvenile prisoners and occasionally for male prisoners as well, that the male officers received more assistance from other deputies and trustees, and that the male officers also took part in such jobs as recordkeeping, fingerprinting, cooking, and cleaning. *See United States v. City of Milwaukee*, 441 F.Supp. 1371, 1376 (E.D. Wis.1977) (greater volume of male prisoners irrelevant to equal work issue). We conclude that the district court correctly held that the work performed by Brewster was substantially equal to that of the male correctional officers. Thus, Brewster established a prima facie violation of the Equal Pay Act.

■ Once Brewster established a prima facie violation of the Act, the burden shifted to the defendants to prove by a preponderance of the evidence that the wage differential was due to (1) a seniority system, (2) a merit system, (3) a system pegging earnings to quality or quantity of production, or (4) any factor other than sex. 29 U.S.C. § 206(d)(1) (1982); *Corning Glass*

*Works,* 417 U.S. at 196–97, 99 S.Ct. at 2229. The district court found that the Board of Supervisors and the Compensation Board failed to meet their burden of proving any one of the four affirmative defenses.[9] The defendants assert that they met their burden of proving that Brewster's lower wages were due to a factor other than sex. Briefly, the Compensation Board contends that they refused to pay Brewster as a correctional officer because the Board of Supervisors had not certified that she spent over fifty percent of her time as a correctional officer. The Board of Supervisors assert that they did not certify Brewster because they were not sure that she met the fifty percent requirement. ·

▆ The defendants' burden of proving that the wage differential is due to a factor other than sex is a heavy one, and this court must uphold the district court's finding unless it is clearly erroneous. Fed. R.Civ.P. 52(a); *EEOC v. Whitin Machine Works, Inc.,* 635 F.2d 1095, 1098 (4th Cir. 1980); *see Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 1510–11, 84 L.Ed.2d 518 (1985). In the instant appeal, neither the Board of Supervisors nor the Compensation Board ever attempted to determine whether Brewster met the fifty percent requirement.[10] The defendants failed to investigate her requests for a pay increase despite repeated representations by Shockley that Brewster spent one hundred percent of her time as a correctional officer, the knowledge that Shockley had moved from the jail and hired a new secretary, and even warnings from Shockley and Brewster that the defendants might be engaging in sex discrimination.[11] The Equal

Pay Act "has been structured to permit employers to defend against charges of discrimination where their pay differentials are based on a *bona fide* use of 'factors other than sex.'" *County of Washington v. Gunther,* 452 U.S. 161, 170, 101 S.Ct. 2242, 2248, 68 L.Ed.2d 751 (1981) (emphasis added); *Laffey v. Northwest Airlines, Inc.,* 740 F.2d 1071, 1078–80 (D.C.Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 939, 183 L.Ed.2d 951 (1985); *Hodgson v. American Bank of Commerce,* 447 F.2d 416, 423 (5th Cir.1971). The district court found, however, that the defendants' conduct with respect to Brewster did not represent the bona fide use of a factor other than sex. We cannot say that this finding is clearly erroneous. Thus, Brewster is entitled to recover on her claim under the Equal Pay Act.

## IV.

▆ Our holding that Brewster was not a member of Shockley's "personal staff" and, thus, was an "employee" under the Equal Pay Act, similarly requires us to hold that Brewster was an "employee" under Title VII.[12] On the merits of her Title VII claim, however, the district court found that Brewster failed to meet her ultimate burden of proving that the defendants intentionally discriminated against her because of her sex. The district court found that the Board of Supervisors and the Compensation Board honestly believed, albeit incorrectly, that Brewster did not meet the fifty percent requirement. Viewing the record in its entirety, we cannot conclude that the district court's finding is clearly

---

**9.** The district court refused to hold Shockley liable for the wage differential on the grounds that he did everything he could to increase Brewster's wages short of bringing a lawsuit against the state on her behalf. We agree that Shockley acted reasonably and met his burden of showing that, with respect to himself, Brewster's lower wages were due to a factor other than sex—the refusal of the Board of Supervisors and the Compensation Board to grant his repeated requests to raise her salary.

**10.** As the district court noted, "[n]othing in the state law requires the Compensation board to

obtain the consent of the local Board of Supervisors before placing an employee on the corrections officer pay scale." *Brewster,* 608 F.Supp. at 1169.

**11.** *See* Compensation Board's Trial Exhibit No. 22 (pay request form sent to the Compensation Board from Shockley) and Plaintiff's Trial Exhibit No. 2 (letter from Brewster to Board of Supervisors). Both refer the defendants to recent federal decisions on sex discrimination.

**12.** *See supra* note 7.

erroneous.[13] Since the defendants did not intentionally discriminate against Brewster because of her sex, there was no violation of Title VII. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).[14]

## V.

■ Finally, we hold that the statute of limitations does not bar Brewster's Equal Pay Act claim against the Board of Supervisors or the Compensation Board. The Equal Pay Act bars any action not commenced within two years after the cause of action accrues. 29 U.S.C. § 255(a) (1982).[15] In the instant appeal, the defendants refused to pay Brewster as a correctional officer until July 1, 1977. At that time, the defendants raised Brewster's salary to the starting salary for a correctional officer with no experience. The defendants refused, however, to give Brewster seniority credit for the period from 1975 to 1977 in which she spent one hundred percent of her time as a correctional officer. Thus, her salary from July 1, 1977 to December 31, 1979, the last day of her employment, was lower than the salary received by male correctional officers who had been certified in 1975. The defendants' refusal to pay Brewster the same salary as that received by male correctional officers certified in 1975 constituted a continuing violation up to the last day of her employment. *Jen-kins v. Home Insurance Co.*, 635 F.2d 310, 312 (4th Cir.1980).

Since Brewster filed her Equal Pay Act suit on April 16, 1980, she was entitled to recover back pay from April 16, 1978 to December 31, 1979. In the district court, the parties stipulated that the difference between the salaries of Brewster and her male counterparts over this period was $2,777.25. We see no reason to disturb this amount on appeal.

In addition to back pay, the district court awarded Brewster attorneys' fees and costs pursuant to 42 U.S.C. § 1988 (1982). It appears to us that the various claims Brewster pursued in the district court are so closely related that the result of this appeal will not change the amount of the award. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Barber v. Kimbrell's Inc.*, 577 F.2d 216 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). However, since we must remand the case to the district court for modification of its judgment, we leave that determination to the district court.

In sum, the members of the Board of Supervisors and the Compensation Board, both individually and in their official capacities, are liable for violating the provisions of the Equal Pay Act. The case is remanded so that the district court may modify its judgment accordingly.

AFFIRMED IN PART, REVERSED IN PART, REMANDED.

13. The finding that the defendants did not intentionally discriminate against Brewster because of her sex is not inconsistent with the previous finding that the defendants violated the Equal Pay Act. "[T]he [district] court's finding simply means that defendant[s] did not *intend* to discriminate against plaintiff because of her sex. Discriminatory intent is not an element of a claim under the [Equal Pay] Act." *Sinclair v. Automobile Club of Oklahoma, Inc.*, 733 F.2d 726, 729 (10th Cir.1984) (emphasis added); *Hodgson v. American Bank of Commerce*, 447 F.2d 416, 423 (5th Cir.1971).

14. Brewster also claims that the defendants' conduct violated Title VII under the "disparate impact" theory. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The conduct challenged by Brewster, however, does not involve "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another...." *International Bhd. of Teamsters*, 431 U.S. at 335 n. 15, 97 S.Ct at 1855 n. 15. As such, her claim is only one of "disparate treatment." *See Stastny v. Southern Bell Tel. and Tel. Co.*, 628 F.2d 267, 274 n. 10 (4th Cir.1980).

15. Actions for "willful violations" may be commenced up to three years after they accrue. 29 U.S.C. § 255(a) (1982). The district court held that the defendants' conduct did not amount to a "willful violation," and Brewster has not appealed that aspect of its decision.