**Wilma Jean SALMONS, Plaintiff**

v.

**DOLLAR GENERAL CORPORATION, et al., Defendants**

Civil No. AMD 95–1416.

United States District Court,
D. Maryland.

Sept. 30, 1996.

Order Denying Reconsideration
Nov. 19, 1996.

Frank Todd Taylor, Jr., Columbia, MD, for Plaintiff.

Robert L. Ferguson, Jr., Ferguson, Schetelich & Hefferman, P.A., Baltimore, MD, for Defendants.

## MEMORANDUM

DAVIS, District Judge.

The plaintiff is a former retail store manager for defendant Dollar General Corporation. She asserts. gender wage discrimination and retaliation claims under the Equal Pay Act, 29 U.S.C. § 206(d) et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Pending before the Court is defendants' motion for summary judgment. No hearing is necessary. Local Rule 105.6 (D.Md.1995). For the reasons explained below, the defendants have shown that no material facts are in dispute and that as a matter of law they are entitled to summary judgment.

### I.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The movant, then, bears two burdens. First, the movant must show that no genuine issues of material fact remain for the fact finder to determine at trial. Second, the movant must show that the law is in his favor.

Conversely, the non-movant must demonstrate that genuine issues of material fact exist. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11. This burden "is particularly strong when the non-moving party bears the burden of proof." *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990). A fact is material for summary judgment purposes if, when applied to the substantive law, it affects the outcome of the litigation. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A non-movant cannot create a genuine issue of material fact by resting upon her own mere allegations or denials contained in her pleadings, Fed.R.Civ.P. 56(e), nor can she create a dispute of fact by relying upon "mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). Instead, in order for a genuine issue of material fact to exist, there must be sufficient evidence upon which a jury could return a verdict in the non-movant's favor. *See Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991).

### II.

This case presents unusual difficulties in setting forth the non-movant's (plaintiff's) version of the facts. This is primarily because, as defendants have exhaustively and compellingly demonstrated, the factual bases for plaintiff's claims are, to put it charitably, dynamic rather than static. That is to say, plaintiffs factual claims seem ever to evolve over time. When viewed as a whole, there is an extraordinary lack of coherence and candor in plaintiffs interrogatory answers, deposition testimony, and post-deposition affidavit

prepared under her substitute counsel's supervision. Having made the above observations, however, it must be recalled that credibility determinations ordinarily have no role in summary judgment practice. Accordingly, I shall endeavor to summarize as plausibly as the record permits the plaintiffs version of the events underlying her claims.

The gist of Salmons's claims reduces to three essential propositions: (1) that Dollar General has a long-standing official corporate policy of paying female managers less than male managers; (2) that pursuant to this policy, she was paid less than her brother, who worked briefly for Dollar General from 1991 through 1992; and (3) that when she sought to remedy this deprivation of her rights by filing a complaint of unlawful discrimination, Dollar General retaliated against her. I shall first trace some of the alleged historical evidence relied upon by Salmons. I shall then summarize the events of 1991 and 1992 which underlie Salmons's claims.

Dollar General operates discount retail stores in twenty-four states.[1] Dollar General groups its stores into districts, and each district is run by a district manager. As a matter of corporate policy, Dollar General district managers negotiate individual salaries with prospective employees. Factors a district manager considers in hiring store managers and in setting salaries include employment background and experience, store location and potential travel expenses, sales volume at the location, shrinkage or inventory control, and the level of difficulty involved in managing a particular store.

Salmons was hired in March 1982, and worked as a store manager at Dollar General's Edgewood store. While working at Edgewood, Salmons earned approximately $200 per week, When the Edgewood store closed not long after she was hired, Salmons was laid off. In October 1983, after Salmons had been unemployed for several months, Howard Ware, then the district manager of District 28, rehired her to manage the Chestertown store. Ware initially offered Salmons a salary of $210 weekly to manage Chestertown, but as a result of negotiations between them, he agreed to pay an additional $40 for travel expenses, for a total of $250 weekly. Salmons replaced Francis Toy, Chestertown's previous store manager.

While reviewing the payroll records for the Chestertown employees, Salmons allegedly discovered that Toy had been paid $250 per week to manage the Chestertown store, $50 more than she had been earning as a store manager at Edgewood.[2] This claim is demonstrably untrue, however, as the defendants have produced payroll records which indicate that Toy was earning only $200 weekly, a pay rate equal to Salmons's earnings at Edgewood, and less than Salmons's earnings at Chestertown. Nonetheless, Salmons insists that (at that time) she confronted Ware about the pay disparity and Ware responded that it was the policy of Dollar General to pay its male employees at a higher rate. Salmons claims she took no further action in connection with the alleged pay disparity over the next seven or eight years.

In February 1991, Dollar General hired Alonzo Robinson, Salmons's brother, as a first clerk/manager trainee at the Pasadena store. After negotiations with Willie Jackson, then the District 28 manager, Robinson agreed to a salary of $225 weekly. In addition to his weekly base pay, Robinson was reimbursed for transportation expenses he incurred while traveling in excess of one hundred miles per day to Pasadena. Robinson's transportation expenses were not minimal; from February through July, he worked seven days per week and averaged approximately $126.91 in expenses. Store managers were not required to record the number of hours that Robinson worked. Indeed, Robinson was working even on his

---

1. In addition to Dollar General, Salmons names Dollar General's wholly-owned subsidiary, Dolgencorp., Inc., and Anthony Moniodis, the district manager in District 28 who hired her brother, as defendants.

2. Salmons originally included Toy as a male comparator for wage discrimination purposes. However, she has abandoned that claim.

scheduled "off" days. During the same time period, Salmons was earning $330 weekly.[3]

Robinson was promoted to manager of the Pasadena store in April 1991, and his weekly base pay was increased to $310. In June 1991, Robinson transferred to the Glen Burnie store, a location plagued by shrinkage and ineffective management. Robinson's precise salary history is a matter of dispute between the parties. Indeed, as recounted below, although Robinson was apparently a highly-valued employee, he seems now to be somewhat supportive of his sister's allegations of discrimination, although he does not offer any direct evidence of a formal policy of discrimination. It must be noted, as well, that (though he was offered reemployment) Robinson resigned under less than amicable circumstances, and that he, like his sister, has been impeached, e.g., he claims he was hired in February 1991 as a store manager, however, the defendants' business records positively refute this claim. In any event, given his contradictory testimony and the conflicting evidence regarding travel expenses, it is somewhat unclear as to what Robinson's pay rate was from June through October 1991. It is undisputed, however, that Robinson began to earn more money than Salmons either as early as June 1991 or as late as October 1991.

Defendant Moniodis, then the manager of District 28, testified on deposition that given Robinson's earnest work efforts at Pasadena, he was confident Robinson would be able to improve the performance of the Glen Burnie store. In November 1991, Robinson's weekly base pay increased to $345; however, he was no longer compensated for transportation expenses. Robinson remained at the Glen Burnie location and continued to receive $345 weekly until May 1992, when he left Dollar General's employ.

During the spring of 1992, Salmons contends she discovered that Robinson was being paid $1.12 per hour more than she was being paid. Salmons claims she asked Moniodis why she was paid less than Robinson, and Moniodis warned her to keep quiet about the pay disparity or else she would jeopardize her employment. Moniodis denies that this conversation ever occurred. Salmons also asserts that she approached Regional Manager Steve Mantooth about the pay disparity and he likewise instructed her not to make an issue of the disparity.

Throughout the last months of Salmons's employment with Dollar General, the company made several changes in its management policies in an effort to remain competitive with other discount retail stores. In September 1991, Dollar General issued standard operating procedures which, among other things, governed how items should be displayed in the stores and required more frequent store audits and store manager performance evaluations. Against those standards, Salmons's March 1992 performance review indicated that she was meeting company standards but needed to improve in several areas. Moniodis indicates that he recognized that Salmons had been with Dollar General long before many of the changes were adopted and that she might well need assistance in adjusting to the new store management guidelines. Moniodis stated in his deposition that he tried to "partner" with Salmons in an effort to bring her into compliance with the new corporate policies. Salmons agreed that Moniodis was "respectful" when he made suggestions to her about how to comply with corporate standards.

Nevertheless, in May 1992, Salmons filed a gender wage discrimination complaint with the Equal Employment Opportunity Com-

---

**3.** In February 1991, at about the time Dollar General hired her brother, Salmons suffered an on-the-job injury at a McDonald's restaurant, where she also worked. As a consequence, her doctor declared her totally incapacitated through August 1991 and prescribed bed rest for the entire six-month period. Thus, it is not entirely accurate to say that Salmons was working "fulltime" at Dollar General during this period. Indeed, she admits that she would merely visit her store occasionally to check on how things were going, but continued to draw full salary. The record is somewhat unclear as to the extent of defendants' actual knowledge of exactly how little work Salmons was performing during this period, but defendants are entitled to the inference that they were aware of her absences. During discovery in this case, Salmons displayed an extraordinary lack of candor in respect to this matter; only defendants' independent efforts to obtain records of her worker's compensation claim disclosed this information.

mission ("EEOC"), claiming that Dollar General systematically placed females in lower-ranking positions than males and paid females less than males. Thereafter, according to Salmons, the defendants embarked on a series of retaliatory actions intended to harass and intimidate her. She alleges that the defendants falsely accused her of stealing store items; that Moniodis "repeatedly telephoned" her home after midnight; that they criticized her job performance and attire; berated her in front of other employees; and demanded that she arrange store display items in a certain manner, only to insist later that she rearrange her work. She also asserts that the defendants refused to pay proper overtime, or to authorize her to work the overtime hours she previously worked. Finally, Salmons alleges that at the direction of Moniodis, Darryl Rice, a disgruntled store employee, began to harass Salmons and ultimately threatened her life. Consequently, Salmons resigned from Dollar General in September 1992. Somewhat paradoxically, by stipulation announced on the record during Salmons's deposition, the parties agreed that her resignation was voluntary in every respect.

### III.

#### A. Statute of Limitations

█ As a general rule, an Equal Pay Act claim is time-barred if it is not commenced within two years from the time the cause of action accrues. 29 U.S.C. § 255(a); *see also McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135, 108 S.Ct. 1677, 1682, 100 L.Ed.2d 115 (1988); *Brewster v. Barnes,* 788 F.2d 985, 993 (4th Cir.1986). Willful violations of the Equal Pay Act, however, are subject to a three-year statute of limitations. 29 U.S.C. § 255(a); *McLaughlin,* 486 U.S. at 135, 108 S.Ct. at 1682; *Barnes,* 788 F.2d at 993, n. 15. In the equal pay context, "willful" is synonymous with "voluntary," "deliberate," and "intentional." *McLaughlin,* 486 U.S. at 135, 108 S.Ct. at 1682. The willfulness standard requires a showing that an employer

"either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute...." *Id.* at 133, 108 S.Ct. at 1681. Pay disparities maintained in good faith provide a defense to allegations that an employer acted willfully. *See Quirk v. Baltimore Co.,* 895 F.Supp. 773, 789 (D.Md.1995).

Salmons concedes that her Equal Pay Act claim is time-barred under the two-year rule, but seeks to avoid summary judgment by invoking the three-year rule.[4] The defendants contend, however, that the three-year rule does not apply here because Salmons neither alleged in her complaint, nor has she produced in discovery, any sufficient basis to support the conclusion that the defendants acted willfully in paying Robinson more than they paid her. According to the defendants, Robinson eventually earned more than Salmons because he had prior supervisory experience and worked harder than Salmons. Thus, the defendants argue, not only has Salmons failed to prove willfulness for purposes of invoking the three-year limitations rule, the defendants have proved legitimate, non-gender based reasons for paying Robinson more than Salmons.

█ Salmons's Equal Pay Act claim is time-barred. Salmons incorrectly argues that bare allegations of an employer's willfulness are sufficient to preclude summary judgment. She relies on *Cacchione v. Erie Technological Products, Inc.,* 526 F.Supp. 272, 275 (W.D.Pa.1981), for the unexceptional proposition that the willfulness of an employer's actions is ordinarily a factual inquiry that must be reserved for the jury. *Cacchione* is of little assistance to Salmons here. "The fact that motive is often the critical issue in employment cases does not mean that summary judgment is never an appropriate vehicle for resolution." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985); *International Woodworkers of America v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1272 (4th Cir.1981). "Unsupported allegations as to motive do not

---

4. Under the continuing violation theory recognized in wage discrimination cases, the plaintiffs claim accrued on September 4, 1992, her last day of employment. *See Hodgin v. Jefferson,* 447 F.Supp. 804, 809 (D.Md.1978) (finding that sex-based, discriminatory wage payments constitute a continuing violation of the Equal Pay Act).

confer talismanic immunity from Rule 56." *Ross,* 759 F.2d at 365. In the present case, unsupported allegations are all that can be gleaned from Salmons's arguments, even considering the facts in the light most favorable to Salmons. It is undisputed that from February through July 1991, Robinson was working as many as seven days per week and traveling in excess of 100 miles per day to work. It is likewise undisputed (most notably by Robinson, himself) that Robinson's herculean work efforts prompted Moniodis in June 1991 to offer Robinson a management position at the floundering Glen Burnie location, in hopes that Robinson could revive it. These facts provided the defendants with valid, nondiscriminatory reasons for compensating Robinson at a higher rate than Salmons. Absent is a factual basis on which a rational jury could conclude that the defendants willfully paid Salmons less than they paid Robinson. Therefore, summary judgment shall be granted on the ground that the three-year limitations rule does not apply and consequently Salmons's Equal Pay Act claim is barred by the two-year statute of limitations.

Even if Salmons's equal pay claim were not barred by the statute of limitations, the following discussion demonstrates that her claim still fails on the merits.

### B. The Equal Pay Act Claim

■ To establish a prima facie case under the Equal Pay Act, the plaintiff must prove (1) that an employer is paying different wages to employees, (2) of the opposite sex, (3) for equal work. 29 U.S.C. § 206(d)(1). *See Hassman v. Valley Motors, Inc.,* 790 F.Supp. 564, 567 (D.Md.1992). The "touchstone of the equal work analysis" is whether the tasks performed by the male and female employees are substantially equal. *Id.* The Court observed:

> If the jobs to be compared have a "common core" of tasks, i.e., significant portions of the two jobs are identical, the inquiry turns on whether the differing or additional tasks require greater skill or responsibility. Skill is a function of experience, training, education, and ability, and is measured in terms of the "performance requirements" of the job. Responsibility measures, among other things, the degree of "accountability" to higher-ups.

*Id.* at 567–68 (citations omitted); *see also Brewster v. Barnes,* 788 F.2d at 991.

■ Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that the wage differential is due to (1) a seniority system, (2) a merit system, (3) a system pegging earnings to quality or quantity of production, or (4) any factor other than sex. 29 U.S.C. § 206(d)(1); *see also Barnes,* 788 F.2d 985, 991 (4th Cir.1986). If the defendant fails to establish a defense, then the defendant is liable for wage discrimination.

■ Salmons contends that she actually had *more* duties and responsibilities than Robinson and other District 28 store managers and therefore has satisfied her burden of proving equal work. For example, she points out that under former District 28 manager Willie Jackson's tenure, store managers in District 28 forwarded their weekly sales and payroll reports to Salmons, and she would subsequently forward the reports to Jackson.[5] The defendants argue, on the other hand, that Robinson's position required more skill and imposed upon him more responsibility because he managed a more difficult store than Salmons. While the question is close, I find that Salmons has established her prima facie case under the Equal Pay Act. Dollar General paid Robinson, a male, at a higher hourly rate than it paid Salmons, a female. Moreover, though Robinson apparently exerted more effort in performing his duties, jurors could reasonably find that the work itself was substantially equal. Both Salmons and the defendants have offered little more than allegations that store managers in District 28 do not share a "common

---

**5.** Also, Salmons occasionally assisted other store managers with their inventories, and she argues that this effort is a further example of her duties and responsibilities which exceed those of other store managers. However, Salmons was paid overtime when she assisted with inventory. Dollar General did not incorporate this additional work into Salmons's general duties as store manager.

core" of tasks, and that any additional tasks Salmons or Robinson individually performed required greater skill or responsibility than usual.

Nonetheless, as a matter of law, the defendants have established the applicability of one of the statutory defenses. Robinson brought more than ten years of previous work experience as a supervisor to Dollar General when he was hired in February 1991. Additionally, from March 1991 through at least July 1991, Salmons was not working full-time at Dollar General. Salmons had placed her first clerk in charge of handling her managerial duties at Dollar General, and Salmons called or occasionally stopped by the store to make sure things were running smoothly. Meanwhile, Robinson was driving hundreds of miles every week and working every day of the week. Certainly the defendants had bona fide, non-discriminatory reasons for compensating Robinson at a higher rate than Salmons. Thus, the defendants have established as a matter of law that any pay disparity was based on a "factor other than sex." Accordingly, summary judgment is appropriate.

### C. The Title VII Claim

A plaintiff bringing a Title VII sex discrimination claim must establish essentially the same prima facie case as with an equal pay claim. 42 U.S.C.2000e–2(a)(1); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir.1989) (indicating that the sex discrimination provisions of Title VII and the EPA are construed in harmony); *Hassman v. Valley Motors, Inc.*, 790 F.Supp. 564, 568 (D.Md.1992) (noting that the same three elements of a prima facie case must be established in EPA and Title VII claims). Similarly, the defendant in a Title VII sex discrimination claim must satisfy one of the four statutory defenses. 42 U.S.C. § 2000e–2(h); *Hassman*, 790 F.Supp. at 568. However, "[o]nce the defendant offers a non-discriminatory justification for the wage differential, the burden of persuasion remains on the plaintiff to demonstrate that the proffered explanation is pretextual and that the defendant was actually motivated by discriminatory intent," *Brinkley–Obu v.*

*Hughes Training, Inc.*, 36 F.3d 336, 344 (4th Cir.1994). The plaintiff may prove pretext directly, "by persuading the court that a discriminatory reason more likely motivated the employer," or indirectly, "by showing that the employer's proffered explanation is unworthy of credence." *Id.; Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983).

In the present case, Salmons has demonstrated neither that some discriminatory reason more likely motivated Dollar General to compensate Robinson at a higher rate, nor that the numerous factors which caused Dollar General to compensate Robinson at a higher rate are incredible. In her Amended Complaint, Salmons alleges that previous Dollar General district managers informed her of the store's policy to compensate males at higher rates than females. Nonetheless, Salmons did not attempt to support those allegations with actual evidence as a part of her opposition to the motion for summary judgment. Payroll records and deposition testimony demonstrate that Salmons earned more than Toy, a male store manager in District 28. Other evidence shows that Robinson devoted more time and effort to his job and consequently was compensated at a higher rate than Salmons. There simply exists no proof upon which a reasonable jury could find for Salmons on this claim. The defendants are therefore entitled to summary judgment as a matter of law on the Title VII claim.

### D. The Equal Pay Act and Title VII Retaliation Claims

An employee who fails to prove gender wage discrimination may still succeed in proving unlawful retaliation. A plaintiff alleging retaliation must carry the burdens of proof outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (1985); *Warren v. Halstead Industries, Inc.*, 802 F.2d 746, 752 (4th Cir.1986). To establish a prima facie case, a plaintiff must show

that (1) she engaged in protected activity; (2) the employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. *See Dwyer v. Smith*, 867 F.2d 184, 190–91 (4th Cir.1989); *Ross*, 759 F.2d at 365. Retaliation is presumed once the plaintiff establishes her prima facie case, and the defendant must produce evidence of a legitimate, nondiscriminatory reason for the adverse action in order to rebut the presumption. *Dwyer*, 867 F.2d at 190–91. The defendant's burden is qualified, however: it need not prove that no retaliatory motive exists, but must only raise a genuine issue of fact whether retaliation occurred because of the protected activity.[6] Once the defendant satisfies this burden, the plaintiff, to avoid an adverse summary judgment, must establish the existence of a genuine dispute of material fact that the defendant's proffered reason is pretextual. *Ross*, 759 F.2d at 365. Specifically, the plaintiff must show that "but for" her protected activity, the defendant would not have taken the adverse action. *Id.* at 366; *Warren*, 802 F.2d at 755.

Drawing all permissible inferences in the plaintiff's favor, I nonetheless conclude that Salmons has failed to establish a prima facie case and that, even if she has, she has failed to create a genuine dispute of material fact on the issue of pretext. Salmons initially claimed that the defendants, and more specifically Moniodis, accused her of stealing. By her own deposition testimony, however, Salmons admits that the defendants never accused her of stealing. On the evening when Salmons's store receipts were short several hundred dollars, Salmons was not working. However, Salmons's name was signed on the accounting sheet by one of her clerks. Salmons informed Moniodis that she neither signed the sheet nor took the money. Moniodis' post-investigation memorandum documenting the shortage in Salmon's store indicates that Salmons was never considered a suspect. Thus, the facts conclusively negate Salmons's claim, even assuming that such an allegation constitutes "adverse ac-

tion" for purposes of analyzing a retaliation claim.

Salmons concedes other fatal weaknesses in her retaliation claim. She contends that the defendants repeatedly called her at home after midnight. However, her deposition testimony indicates that only two such phone calls were made, and Moniodis admits placing one call in reference to a fire at a dumpster outside her store. Salmons cannot remember the date of the other phone call; she was out of town when her family received the call. Assuming that Moniodis did phone her a second time during the early morning hours (and that this constitutes cognizable "adverse action"), Salmons has not demonstrated how the phone call was ill-motivated or causally linked to her EEOC complaint. Thus, she has failed to establish a critical element in her prima facie case.

Salmons's claim that the defendants acted adversely by commenting on her job performance similarly lacks merit. As a result of changes in Dollar General's corporate policies in 1991, defendant Moniodis began to conduct store audits and performance evaluations more frequently. Salmons admits that Moniodis was respectful when he requested that she change displays. She also admits that she may have taken some of his "criticisms" personally. Given that Moniodis began to scrutinize Salmons's job performance more carefully in accordance with corporate policies that were enacted *prior* to the time Salmons filed her EEOC complaint, there can be no "but for" causal relationship between the EEOC complaint and Moniodis' actions. Moreover, even if Moniodis criticized Salmons's performance or appearance after she filed her complaint, Salmons has failed to demonstrate that changed corporate policy is a pretextual reason for Moniodis' criticism. In fact, Salmons admits in her deposition testimony that Dollar General had probably tightened its standards and procedures to ensure that the stores were well maintained.

---

**6.** The employer's burden is further qualified in that it only bears the burden of production, not the burden of persuasion. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101

S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981). *Compare Dwyer v. Smith*, 867 F.2d 184, 191, n. 1 (4th Cir.1989).

Salmons also fails to generate a dispute of fact as to the defendants' explanations for eliminating overtime hours and for the requirement that store managers in District 28 submit reports to the district manager. In accordance with reasonable business judgment, Dollar General sought to cut costs by scaling back overtime. Moreover, Salmons was no longer asked to collect weekly payroll reports from other District 28 store managers because it became unnecessary for her to do so. She collected the reports for District 28 manager Willie Jackson because his office was located at Salmons's store and he was often out of the office. In contrast, Moniodis' office was not located at Salmons's store, and in light of the fact that he was often present and much more involved with the stores in his district, the need for a middle person was eliminated. These explanations raise a "genuine issue of fact" as to whether the defendants actually retaliated in response to Salmons's EEOC complaint, and as such, the defendants have satisfied their burden. Absent proof of pretext, these claims must fail.

· Finally, Salmons's indirect suggestion that defendant Moniodis played some part in former employee Darryl Rice's threatening phone calls is simply unsupported. Salmons alleges that Moniodis and Rice had a meeting, and afterward Rice began to harass and threaten her. In deposition testimony, however, Salmons concedes that she is uncertain whether Moniodis and Rice ever spoke with each other. Here again, Salmons has not established an element of her prima facie case, namely, that the *defendants* took adverse action against her. Therefore, despite Salmons's myriad allegations, I find no merit in any of them as a matter of law, and consequently I shall grant summary judgment to the defendants on the Equal Pay Act and Title VII retaliation claims.

## IV

For the reasons set forth, the defendants' motion for summary judgment shall be granted as to all of Salmons's claims. A separate order shall be entered herewith.

## ORDER

In accordance with the foregoing Memorandum, it is this 30th day of September 1996, by the United States District Court for the District of Maryland, ORDERED

(1) That the defendants' Motion for Summary Judgment BE, and it hereby IS, GRANTED; and it is further ORDERED

(2) That JUDGMENT BE and it hereby IS ENTERED IN FAVOR OF DEFENDANTS; and it is further ORDERED

(3) That the Clerk of the Court shall CLOSE THIS CASE and MAIL copies of this Order and the foregoing Memorandum to the attorneys of record.

## ORDER

In a Memorandum and Order filed on September 30, 1996, I granted defendants' motion for summary judgment. Thereafter, several communications were received directly from plaintiff, apparently acting on her own and without her counsel's knowledge or involvement. Among other representations contained in those communications, plaintiff's brother makes the remarkable assertion that he lied during his deposition in this case. In any event, treating plaintiff's various submissions as a motion for reconsideration, the motion is this 19th day of November, 1996, by the United States District Court for the District of Maryland, DENIED. The Clerk of the Court shall MAIL copies of this Order to the attorneys of record, and to plaintiff at 724 Hookers Mill Road, Abingdon, Md., 21009.